PATRICK E. STOCKALPER, SBN 156954
CHAENA DADE, SBN 310365
KEISHUNN JOHNSON SBN 350243
KJAR, MCKENNA & STOCKALPER, LLP
841 Apollo Street, Suite 100
El Segundo, California 90245
Telephone (424) 217-3026
Facsimile (424) 367-0400
pstockalper@kmslegal.com
cdade@kmslegal.com
kjohnson@kmslegal.com

Attorneys for Defendant,
**MEHRYAR TABAN, MD**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA–WESTERN DIVISION**

| | |
|---|---|
| FRANK TUFANO,<br><br>Plaintiff,<br><br>v.<br><br>MEHRYAR RAY TABAN; THE MEDICAL BOARD OF CALIFORNIA; AMERICAN ACADEMY OF OPTHALMOLOGY; AMERICAN BOARD OF COSMETIC SURGERY; AMERICAN SOCIETY OF OPHTHALMIC PLASTIC AND RECONSTRUCTIVE SURGERY;<br><br>Defendants. | **Case No.:** 2:25-cv-00147-SVW-JC<br><br>**DECLARATION OF CHAENA DADE IN SUPPORT OF DEFENDANT MEHRYAR TABAN, MD'S EX PARTE APPLICATION TO ADVANCE HEARING AND FOR URGENT RULING ON MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT PURSUANT TO 28 U.S.C. § 1651; OR, IN THE ALTERNATIVE, ENJOIN PLAINTIFF PURSUANT TO RULE 11**<br><br>Action Filed: January 3, 2025<br>Pretrial Conference: July 6, 2026<br>Trial Date: July 14, 2026<br><br>Assigned to:<br>Hon. Stephen V. Wilson, District Judge<br>Courtroom 10A<br>Magistrate Judge Anna Y. Park, Crtrm 750 |

# DECLARATION OF CHAENA DADE, ESQ.

I, CHAENA DADE, declare and state as follows:

1. I am an attorney at law duly licensed to practice as such before all the courts of the State of California and am a partner in the law offices of Kjar, McKenna & Stockalper, LLP, attorneys of record for moving party, Defendant MEHRYAR TABAN, MD in this action. I have personal knowledge of the matters set forth herein, and if called to testify, I could and would competently testify to the facts set forth in this Declaration based upon my personal knowledge.

2. On March 26, 2026, at 9:55 a.m., I provided Plaintiff with notice of Defendant's intention to file an ex parte application to advance the hearing on Defendant's Motion to Declare Plaintiff a Vexatious Litigant. Notice was provided by email to Plaintiff at the address he regularly uses for communications in this matter. In that notice, I informed Plaintiff of the nature of the relief sought, the basis for the application, and his opportunity to submit a written opposition pursuant to Local Rule 7-19.1. A true and correct copy of Defendant's email notice is attached as **Exhibit A**.

3. On March 26, 2026, at 10:44 a.m., Plaintiff responded to my notice by email. In that email, Plaintiff stated that he "opposes this Motion" and asserted that "filing a case in another state after a corrupt CA state judge dismisses a serious medical malpractice case while discriminating against a disabled individual is nothing close to vexatious ." Plaintiff further stated that the Pennsylvania action "would not have been filed" but for his belief that Dr. Taban interfered with his business and caused his social media accounts to be banned. A true and correct copy of Plaintiff's email is attached as **Exhibit A.**

4. Plaintiff has filed at least eight separate actions against Dr. Taban, his medical corporation, and his counsel arising from the same February 2023 surgical procedure. These actions span multiple jurisdictions and repeatedly attempt to duplicate litigation of the same issues.

5. Plaintiff has also filed twenty-six federal actions in the Middle District of Pennsylvania alone in the past three years. Many of these cases were dismissed for improper venue, failure to state a claim, or failure to comply with court orders. The volume and repetitive nature of these filings demonstrate a sustained pattern of abusive litigation.

6. During meet and confer efforts, on February 17, 2026, Plaintiff stated that he intends to file lawsuits against Dr. Taban "every year for the rest of [his] life." This admission confirms that Plaintiff's litigation conduct is intentional, retaliatory, and ongoing.

7. Plaintiff recently filed a new action in the Pennsylvania Court of Common Pleas, where a responsive pleading is due on **April 3, 2026**. Unless this Court advances the hearing and rules on the vexatious litigant motion on an expedited basis, Defendant will be forced to expend significant and unnecessary resources to retain counsel in Pennsylvania or seek admission *Pro Hac Vice* to defend a duplicative and meritless action arising from the same facts already before this Court. Attached hereto as **Exhibit B** is a true and correct copy of the Pennsylvania Court of Common Pleas Verified Complaint filed by Plaintiff on February 23, 2026 (Case No. **26CV1161**).

8. The need for an urgent ruling is therefore substantial. Plaintiff's ongoing pattern of duplicative filings, his stated intention to continue suing indefinitely, and the imminent Pennsylvania deadline create immediate prejudice that cannot be remedied through ordinary noticed motion procedures. Advancing the hearing and issuing an expedited ruling will allow Defendant to present this Court's determination to the Pennsylvania court and prevent further unnecessary litigation.

9. This application is made in good faith and not for the purpose of delay. It is supported by this declaration, the accompanying Ex Parte Application, the Memorandum of Points and Authorities, the records and files in this action, and any further evidence or argument the Court may consider.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 31, 2026, at Los Angeles, California.

CHAENA DADE

# EXHIBIT A

**Keishunn Johnson**

| | |
|---|---|
| **From:** | Chaena B. Dade |
| **Sent:** | Thursday, March 26, 2026 9:55 AM |
| **To:** | Frank Tufano; frank@frank-tufano.com |
| **Cc:** | Patrick Stockalper; Barbara Ezra; Sahara Tolliver |
| **Subject:** | [80-98.001] EX PARTE NOTICE re: Motion to Declare Plaintiff Vexatious Litigant |
| **Attachments:** | District Court Order.pdf |

Dear Mr. Tufano:

I am in receipt of your duplicative lawsuit filed in Pennsylvania state court, wherein you name Kjar, McKenna & Stockalper LLP as a defendant and seek a temporary restraining order to prevent our firm from engaging in standard discovery procedures. As you will recall, Judge Wilson previously denied this request against our firm for the same conduct alleged in the newest complaint, which the Court described as "appropriate and justified," citing the medical records as "highly relevant, even necessary, in a determination of what injury, if any, may have been attributable to [Dr. Taban]." (See attached District Court Order, Paragraph G., pg. 10).

During our Rule 26 meet and confer telephone discussion on February 17, 2026, you expressed your intention to file the same lawsuit against Dr. Taban (and apparently his counsel) every year for the rest of your life. In light of the fast-approaching responsive pleading deadline to the newest lawsuit for the same conduct we are litigating in Central District of California, we have no choice but to seek ex parte relief to declare you a "vexatious litigant."

**As such, this email serves as notice that Defendant Dr. Mehryar Ray Taban intends to seek ex parte relief in the United States District Court for the Central District of California to advance the hearing date on Defendant's Motion to Declare Plaintiff a Vexatious Litigant. Defendant is seeking an earlier hearing date due to your continued filing of duplicative and meritless actions in multiple jurisdictions arising from the same underlying facts.**

**If you intend to oppose the ex parte application, your opposition must be filed within twenty-four hours of service of the application or by 3:00 p.m. on the first court day following service, whichever is later. Please advise by email as soon as possible whether you intend to oppose the application. If you require additional time to prepare any opposition, you will need to contact the courtroom deputy for the assigned judge to request an extension. If you do not intend to oppose the application, you must inform the court clerk at 213-894-2881.**

Thank you.

Chaena Dade
Partner

**KJAR, McKENNA & STOCKALPER, LLP**
841 Apollo Street, Suite 100
El Segundo, California 90245
424-397-1024- Office
424-217-3026 – Main No.
424-367-0400 – Fax No.
cdade@kmslegal.com
www.kmslegal.com

**THIS MESSAGE IS CONFIDENTIAL**, INTENDED FOR THE NAMED RECIPIENT(S) AND MAY CONTAIN INFORMATION THAT IS (I) PROPRIETARY TO THE SENDER, AND/OR, (II) PRIVILEGED, CONFIDENTIAL, AND/OR OTHERWISE EXEMPT FROM DISCLOSURE UNDER APPLICABLE STATE AND FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, PRIVACY STANDARDS IMPOSED PURSUANT TO THE FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 ("HIPAA"). IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR BY TELEPHONE AT 424-217-3026 AND DESTROY THE ORIGINAL TRANSMISSION AND ITS ATTACHMENTS WITHOUT READING OR SAVING THEM TO DISK. THANK YOU.

## Keishunn Johnson

| | |
|---|---|
| **From:** | Frank Tufano <frankatufano@gmail.com> |
| **Sent:** | Thursday, March 26, 2026 10:44 AM |
| **To:** | Chaena B. Dade |
| **Cc:** | frank@frank-tufano.com; Patrick Stockalper; Barbara Ezra; Sahara Tolliver |
| **Subject:** | Re: [80-98.001] EX PARTE NOTICE re: Motion to Declare Plaintiff Vexatious Litigant |

I oppose this Motion - filing a case in another state after a corrupt CA state judge dismisses a serious medical malpractice case while discriminating against a disabled individual is nothing close to vexatious

The case would not have been filed if your client did not interfere with my business and get my social media -- accounts banned

On Thu, Mar 26, 2026 at 12:55 PM Chaena B. Dade <cdade@kmslegal.com> wrote:

> Dear Mr. Tufano:
>
> I am in receipt of your duplicative lawsuit filed in Pennsylvania state court, wherein you name Kjar, McKenna & Stockalper LLP as a defendant and seek a temporary restraining order to prevent our firm from engaging in standard discovery procedures. As you will recall, Judge Wilson previously denied this request against our firm for the same conduct alleged in the newest complaint, which the Court described as "appropriate and justified," citing the medical records as "highly relevant, even necessary, in a determination of what injury, if any, may have been attributable to [Dr. Taban]." (See attached District Court Order, Paragraph G., pg. 10).
>
> During our Rule 26 meet and confer telephone discussion on February 17, 2026, you expressed your intention to file the same lawsuit against Dr. Taban (and apparently his counsel) every year for the rest of your life. In light of the fast-approaching responsive pleading deadline to the newest lawsuit for the same conduct we are litigating in Central District of California, we have no choice but to seek ex parte relief to declare you a "vexatious litigant."
>
> **As such, this email serves as notice that Defendant Dr. Mehryar Ray Taban intends to seek ex parte relief in the United States District Court for the Central District of California to advance the hearing date on Defendant's Motion to Declare Plaintiff a Vexatious Litigant. Defendant is seeking an earlier hearing date due to your continued filing of duplicative and meritless actions in multiple jurisdictions arising from the same underlying facts.**

**If you intend to oppose the ex parte application, your opposition must be filed within twenty-four hours of service of the application or by 3:00 p.m. on the first court day following service, whichever is later. Please advise by email as soon as possible whether you intend to oppose the application. If you require additional time to prepare any opposition, you will need to contact the courtroom deputy for the assigned judge to request an extension. If you do not intend to oppose the application, you must inform the court clerk at 213-894-2881.**

Thank you.

Chaena Dade

Partner

**KJAR, McKENNA & STOCKALPER, LLP**

841 Apollo Street, Suite 100

El Segundo, California 90245

424-397-1024- Office

424-217-3026 – Main No.

424-367-0400 – Fax No.

cdade@kmslegal.com

www.kmslegal.com

**THIS MESSAGE IS CONFIDENTIAL**, INTENDED FOR THE NAMED RECIPIENT(S) AND MAY CONTAIN INFORMATION THAT IS (I) PROPRIETARY TO THE SENDER, AND/OR, (II) PRIVILEGED, CONFIDENTIAL, AND/OR OTHERWISE EXEMPT FROM DISCLOSURE UNDER APPLICABLE STATE AND FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, PRIVACY STANDARDS IMPOSED PURSUANT TO THE FEDERAL HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 ("HIPAA"). IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE

TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY REPLY E-MAIL OR BY TELEPHONE AT 424-217-3026 AND DESTROY THE ORIGINAL TRANSMISSION AND ITS ATTACHMENTS WITHOUT READING OR SAVING THEM TO DISK. THANK YOU.

# EXHIBIT B

Frank Tufano
25 Dundaff ST
Carbondale, PA 18407
(917)599-2160
frankatufano@gmail.com

PENNSYLVANIA COURT OF COMMON PLEAS

LACKAWANNA COUNTY

| | |
|---|---|
| FRANK TUFANO,<br>Plaintiff,<br>vs.<br>THE STATE OF CALIFORNIA et al.<br>Defendant | Case No. 26 CV 1161<br><br>SUMMONS |

TO THE ABOVE NAMED DEFENDANT(s) YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or if the Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of Pennsylvania); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: Monday, February 23, 2026

By: /s/ Frank Tufano

Frank Tufano

Defendant's Address:
Kjar, Mckenna, & Stockalper, LLP
841 Apollo ST, #100
El Segundo, CA 90245

2026 FEB 23 P 3: 08
CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

LACKAWANNA County

**For Prothonotary Use Only:**

Docket No: 24CV1161

FEB 23 3:08

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**

☒ Complaint ☐ Writ of Summons ☐ Petition
☐ Transfer from Another Jurisdiction ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Frank Tufano | The State of California |
| **Are money damages requested?** ☒ Yes ☐ No | Dollar Amount Requested: (check one) ☐ within arbitration limits ☒ outside arbitration limits |
| **Is this a *Class Action Suit*?** ☐ Yes ☒ No | **Is this an *MDJ Appeal*?** ☐ Yes ☒ No |

Name of Plaintiff/Appellant's Attorney: ______________________

☒ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: ______________________

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: ______________________

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☒ Medical
- ☐ Other Professional: ______________________

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other ______________________
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other ______________________
- ☐ Other: ______________________

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: ______________________

**CIVIL APPEALS**

Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other ______________________
- ☐ Zoning Board
- ☐ Other: ______________________

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: ______________________

*Updated 1/1/2011*

Frank Tufano
25 Dundaff ST
Carbondale, PA 18407
(917)599-2160
frankatufano@gmail.com

PENNSYLVANIA COURT OF COMMON PLEAS

COUNTY OF LACKAWANNA

| | |
|---|---|
| FRANK TUFANO ,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE OF CALIFORNIA<br>BEVERLY HILLS MASONIC LODGE<br>MEHRYAR RAY TABAN MD<br>MEHRYAR TABAN MD INC.<br>THE MEDICAL BOARD OF CALIFORNIA<br>AMERICAN ACADEMY OF OPHTHALMOLOGY<br>AMERICAN BOARD OF COSMETIC SURGERY<br>AMERICAN SOCIETY OF OPHTHALMIC PLASTIC AND RECONSTRUCTIVE SURGERY<br>LAVELY & SINGER PC<br>KJAR, MCKENNA, & STOCKALPER, LLP<br><br>Defendants | Case No.: 26CV1161<br><br>VERIFIED COMPLAINT |

2026 FEB 23 P 3:08
CLERK OF JUDICIAL RECORDS CIVIL DIVISION

1. This case arises out of a claim for professional negligence. Plaintiff Frank Tufano alleges Defendant Mehryar Ray Taban MD performed a cosmetic eye procedure on Plaintiff which left him "deformed" and "near blind." Defendant Mehryar Ray Taban MD, Inc. is Dr. Taban's company.

2. The State of California was unable to provide Frank Tufano with a fair court proceeding, using his disability to their advantage and not allowing him to postpone court deadlines or hearings, and discriminated against his Non-Freemasonic Religious beliefs, in favor of a dismissal for defendants. The court, its clerks, and judges, repeatedly ignored Frank Tufanos filings and conspired to work against him.

3. Frank Tufano contacted every single malpractice law firm in the County of Los Angeles as well as nearby areas, with no legal firm willing to represent him, presumably because they have conspired together to protect the interests of Plastic Surgeons in Beverly Hills. -

4. Frank Tufano attempted to recuse the California Judge judge, to disqualify him from the case on multiple occasions, to no avail. Frank Tufano stood no chance against the extreme prejudice of the Court Officials against him, and is therefore filing this action to be heard in the State of Pennsylvania.

5. Frank Tufano believes this is because of the religious beliefs of the judges and defendants, pledging their allegiance to secret organizations such as Freemasonry and the Illuminati. Because Frank Tufano is not a member of these organizations, and has not sworn loyalty to them, he is being discriminated against as an outsider. The belief systems of these organizations take precedence over any officials judicial obligation, and under no circumstance will Frank Tufano be allowed to participate in court in a fair manner.

1. All of these defendant individuals, who are likely members of freemasonry, have probably sworn the following oath to secrecy,

To all of which I do solemnly and sincerely promise and swear, without any hesitation, mental reservation, or secret evasion of mind in me whatsoever; binding myself under no less a penalty than that of having....

Entered Apprentice Degree: "...my throat cut across, my tongue torn out, and with my body buried in the sands of the sea at low-water mark, where the tide ebbs and flows twice in twenty-four hours, should I ever knowingly or willfully violate this, my solemn Obligation of an Entered Apprentice."

Fellow Craft Degree: "...my left breast torn open, my heart and vitals taken thence, and with my body given as a prey to the vultures of the air, should I ever knowingly, or willfully, violate this, my solemn Obligation of a Fellow Craft.";

Master Mason Degree: "...my body severed in twain, my bowels taken thence, and with my body burned to ashes, and the ashes thereof scattered to the four winds of Heaven, that there might remain neither track, trace nor remembrance among man or Masons of so vile and perjured a wretch as I should be, should I ever knowingly or willfully violate this, my solemn Obligation of a Master Mason."

And the ending for each of these obligations is: "So help me, God, and make me steadfast to keep and perform the same." (Also used is "So mote it be" – the same phrase used in witchcraft)

6. The Freemasonic influence on the California Courts is an argument for Frank Tufano to be allowed to file this case in the State of Pennsylvania, as opposed to

the jurisdiction where the surgery occurred, although Freemason officials have an obligation to their fellow brethren regardless of location – the officials for the judicial system of Pennsylvania are not as directly corrupted by the Beverly Hills Plastic Surgery Doctors.

7. The original complaint alleges claims for (1) informed consent, (2) standard of care-sugrical errors, (3) injury and (4) damages. In additiona to Dr. Taban and his company, Plaintiff sued professional associations to which Dr. Taban belonged to, including The Medical Board of California, The American Academy of Ophtalmology, The American Board of Cosmetic Surgery, and The American Society of Ophtalmic Plastic and Reconstructive Surgery.

8. Defendants filed demurrers and/or motions to strike. Plaintiff did not file a single opposition to Defendants papers (as he was physically incapacitated and not served as to standards of other courts). The court sustained in part and overruled in part the demurrer, and granted in part and denied in part the motion to strike, filed by Dr. Taban and his company. The court also sustained without leave to amend Plaintiffs claims against the professional associations.

9. Through this period of time, the court has committed misconduct in failing to ensure a fair judicial procedure for a pro se litigant Frank Tufano, who clearly did not understand what proper filings were necessary in the case circumstances. Whether this is a blatant attempt to rule in favor Defendant Mehryar Ray Taban or the judges failure to acknowledge the legitimacy of a Pro Se Representative is up for the higher court to decide in the recently filed appeal.

10. On November 29, 2023, Frank Tufano underwent a cosmetic eye procedure with Dr. Taban (MEHRYAR RAY TABAN MD) in Beverly Hills California, who presumably operates his surgical practice under the corporation MEHRYAR TABAN MD INC.

11. The initial discovery of injury was 3 months after the procedure, the stated recovery period, on March 1st, 2024.

12. Prior to the surgery Frank Tufano had no issues with his vision or eye area from an aesthetic or functional perspective. Frank Tufano consulted with Dr. Taban, who believed he could improve Frank Tufano's appearance with a combination of four cosmetic procedures.

13. After waiting three months of recovery from the surgery as suggested by Dr Taban - Frank Tufano was left near-blind with severe visual impairment, and poorer facial appearance than before. Dr. Taban directly lied to Frank Tufano about the risks of the procedure, the expected results, and immediately after the surgery – when Frank Tufano was clearly deformed – he attempted to lie and mislead Frank Tufano that everything was okay without offering any guidance or solutions to Frank Tufano's new severe medical problems.

14. According to Dr. Tabans website, "Dr. Mehryar (Ray) Taban is a compassionate Oculoplastic plastic surgeon (eye plastic surgeon) who provides his patients with the best possible care. He is an eyelid, orbit and facial plastic cosmetic and reconstructive surgeon who practices in the greater Los Angeles area, including Beverly Hills, Los Angeles, and Santa Barbara."

15. Frank Tufano's surgical results and personal experience with Dr. Taban are quote contrary to how Dr. Taban portrays himself. As Frank Tufano was left butchered, deformed, and near-blind with no solutions.

16. Dr. Taban performed ac combination of 4 procedures on Frank Tufano – a "cosmetic" orbital decompression, upper eyelid ptosis repair, lower eyelid retraction, and infraorbital rim implant.

17. It is significant to note that there is NO OTHER SURGEON IN THE WORLD is performing orbital decompression for cosmetic purposes – as it is a highly invasive and risky procedure.

18. The professionally credentialed agencies that Dr. Taban is involved with - including The Medical Board of California, The American Academy of Ophtalmology, The American Board of Cosmetic Surgery, and The American Society of Ophtalmic Plastic and Reconstructive Surgery – are full of highly experienced and trained professionals that would never consider or recommend this specific procedure of orbital decompression be performed unless absolutely necessary, especially in a cosmetic application.

19. Frank Tufano has consulted with the top corrective surgeons in the world, including Dr. Guy Massry, Dr. Raymound Douglas, Dr. Bruce Moskowitz, Dr. Brett Kotlus, and none of them have ever seen such damage from an elective cosmetic procedure. Dr Raymound Douglas, who performs hundreds of decompression surgeries per year, had never seen such severe damage as Frank Tufano and none of these doctors offered him any corrective options because of

the highly unusual and never-seen-before damage that Dr. Taban incurred on Frank Tufano.

20. It is beyond shocking that Dr. Taban has been allowed to perform this highly dangerous procedure of orbital decompression in a cosmetic application without any intervention by other medical professionals or medical associations he is affiliated with.

21. As of November 12th, 2024, Frank Tufano has had 5 attempted corrective procedures, 3 to correct his vision and 2 to correct his physical appearance, all of which have not been effective to remedy the problems caused by Dr. Tabans negligence and clear medical malpractice.

22. In February of 2024, Frank Tufano was diagnosed with Strabismus (eye misalignment) by Dr. Jay Wisnicki at NY Eye and Ear Infirmary. Dr. Taban did not acknowledge or recognize this as an issue despite an official diagnosis from another doctor.

23. Frank Tufano underwent his first corrective surgery for strabismus on March 21, 2024 with Dr. Wisnicki, which was unsuccessful despite Dr. Wisnicki stating a 90% chance of success.

24. After several months of recovery Frank Tufano underwent a second corrective surgery for Strabismus in on Juny 27, 2024 with Dr Wisnicki. The doctor was unable to correct Frank Tufano's vision and physical appearance and refused to do any further surgeries despite not remedying the issue.

25. Dr Taban had not made any attempt to help Frank Tufano until Frank Tufano had published a YouTube video on September 13, 2024, explaining what Dr.

Taban had done to Frank Tufano. After just several days of social media impact Dr Taban solicited Frank Tufano to remove the video, not out of remorse, or wanting to help Frank, but solely for his reputation so he can continue to do these horrible procedures to unknowing patients.

26. Frank Tufano removed the video immediately at his request in hopes that his appearance and vision can still be corrected with a future procedure through other medical professionals.

27. On October 4th, 2024, Frank Tufano met with Dr. Yang in NYC who performed several filler procedures in attempt to correct the symmetrical imbalances caused by Dr. Tabans initial surgery. The results were a slight improvement from before but still not successful in creating a "normal physical appearance."

28. In October of 2024, Frank Tufano consulted with Dr Julie Nam, MD, another strabismus specialist, who diagnosed Frank Tufano with eye misalignment (strabismus) despite him already having two attempted surgeries to re-align his eyes.

29. Shortly after, on October 18, 2024, Frank Tufano underwent his third corrective eye procedure for Strabismus, which was not successful. The damage that Dr. Taban has caused to Frank Tufano's eyes has made it impossible for even the top strabismus surgeons in the world to correct.

30. On November 25, 2024, Frank Tufano had a second procedure with Dr. Yang in further attempts to correct the soft tissue imbalances created by Dr. Taban's initial surgery.

31. On December 9, 2024, Frank Tufano, still dissatisfied with his physical appearance, had another consultation with Dr. Yang who confirmed that not much more could be done to correct the soft tissue irregularities caused by Dr Taban.

32. On December 20, 2024, Frank Tufano underwent his fourth corrective eye surgery for Strabismus, and as of the filing of this lawsuit Frank Tufano still has partial blindness and vision loss with no improvement in his disfigured physical appearance.

33. After unsuccessful results from his fourth corrective surgery, Frank Tufano returned to his consulting with Dr. Raymond Douglas, prepared to undergo a full orbital reconstruction.

34. Frank Tufano underwent an Orbital Reconstruction Surgery on May 7, 2025, with Dr. Raymond Douglas in Beverly Hill, CA. Both this procedure and the prior strabismus procedures are extremely invasive with disability being common during recovery.

35. The Courts and Defendant's legal representation have ignored Frank Tufano's physically disabled state, causing increasing stress on Frank Tufano's mental state, worsening his condition by the week.

36. As of July 22, 2025, the date of this amended filing, Frank Tufano is still very physically sick, disabled, and in constant pain every day, yet has not been granted and consideration by the court.

37. Frank Tufano has undergone two additional Orbital Reconstruction Surgeries in Japan, one on November 7, 2025, and one on November 19, 2025, which

implanted several plates in the orbit of his eyes in attempt to stabilize the eye movement. This procedure was only partially successful in improving Frank's appearance, but has worsened the pain.

**Americans with Disabilities Act of 1990**

38. As State and Local Government Services: Title II of the ADA prohibits discrimination in state and local government services, including courts. This includes ensuring access to court proceedings and services for individuals with disabilities.

39. This means that public entities must ensure equal access and opportunity for people with disabilities in all areas, including transportation, education, recreation, and government services.

40. Defendants claim that initial court documents were filed with adherence to California Civil Procedure, however that does not accommodate a bedridden and disabled individual who is unable to effectively communicate with the court.

41. Frank Tufano will give the court and defendants a chance to remedy their errors in mistreatment of a disabled individual with the filing of this amended complaint and adherence to some humane standard for a disabled, pro-se individual.

42. As of the filing of this lawsuit, and despite already having a considerable amount of procedures in only a years time, Frank Tufano still has many consultations scheduled with other Doctors to see if anything can be done to correct his physical appearance.

43. Dr. Taban is licensed through THE MEDICAL BOARD OF CALIFORNIA, their mission being "to protect healthcare consumers and prevent harm through the proper licensing and regulation of physicians and surgeons and certain allied healthcare professionals and through the vigorous, objective enforcement of the Medical Practice Act, and to promote access to quality medical care through the Board's licensing, policy, and regulatory functions."

44. Dr Taban is a member of THE AMERICAN ACADEMY OF OPHTHALMOLOGY (Academy), "a professional medical association of ophthalmologists. It is headquartered in San Francisco, California. Its membership of 32,000 medical doctors includes more than 90 percent of practicing ophthalmologists in the United States as well as over 7,000 members abroad. The Academy's stated mission is "to protect sight and empower lives by serving as an advocate for patients and the public, leading ophthalmic education, and advancing the profession of ophthalmology."

45. Dr. Taban is a member of THE AMERICAN BOARD OF COSMETIC SURGERY, "a U.S. medical board that certifies surgeons in the specialty of cosmetic surgery. Our membership is restricted to surgeons who have completed specific training requirements and passed our rigorous examination process.. As diplomates of the American Board of Cosmetic Surgery, we pride ourselves on setting the highest standards for training, expertise, and ethical practice in the medical specialty of cosmetic surgery. After you read through what it takes for a physician to become board certified by the ABCS, you'll see why choosing an ABCS surgeon means you're choosing a genuine cosmetic surgery specialist."

46. Dr Taban is a member of THE AMERICAN SOCIETY OF OPHTHALMIC PLASTIC AND RECONSTRUCTIVE SURGERY – "No one knows your eyes and face like an ASOPRS Surgeon. Trust your eyes and face to a surgeon who specializes in oculofacial plastic surgery. All ASOPRS members are board-certified ophthalmologists who have completed advanced training in eyelid, orbit, tear duct system and facial cosmetic and reconstructive surgery. We invite you to learn more about the field of oculofacial plastic surgery and find a qualified member surgeon in your area below."

47. Based on the standard of care, injury, and damages incurred to Frank Tufano over the course of his treatment with Dr. Taban, there is a clear misalignment with the professional standards and training portrayed by these professional medical associations. All of these associations have failed to recognize Dr. Tabans clear malpractice in their respective areas of expertise, whether it's a general procedure that should not be performed in a cosmetic application, having knowledge of surgical risks to be conveyed to the patient, performing cosmetic procedures with sub-par skill level and high error rates, and clear lack of knowledge in treating complications arising from orbital surgery.

48. As of May 7, 2025 - After undergoing severe complications and life altering disfigurement from Dr. Taban, Frank Tufano underwent the only successful surgery thus far from Dr. Raymond Douglas, the most qualified and skilled Oculoplastic Surgeon in the United States.

49. After recovering from his surgery, when Frank Tufano reached out to Dr. Douglas for further treatment, the doctor refused to see, or even converse, with him.

50. Frank had spent a large sum of money on surgery and entrusted the doctor with his vision, and now was being denied treatment for no apparent reason.

51. The only reason that Frank Tufano can conclude, is that the subpoena sent to Dr. Douglas' office for medical records by Defendant KJAR, MECKENNA, & STOCKALPER, LLP scared the doctor from treating Frank Tufano in order to avoid any legal issues or increased scrutiny on any procedures performed on Frank Tufano.

52. Frank Tufano is now unable to find treatment for his medical conditions as Dr. Raymond Douglas is the most qualified and expert surgeon in this highly technical and complicated practice of orbital reconstruction.

53. Frank Tufano has consulted with every other available oculoplastic surgeon in the Untied States and Dr. Douglas was the only doctor capable of treating him, but is no longer willing to as a result of defendants reckless actions.

## JURISDICTION

54. Except where exclusive original jurisdiction of an action or proceeding is by statute or by general rule adopted pursuant to section 503 (relating to reassignment of matters) vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

55. Frank Tufano's residence and domicile is in the State of Pennsylvania in the County of Lackawanna

56. All Defendants are known to reside in the State of California.

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**
**California Code, Civil Code - CIV § 1714**

57. Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

58. Existence of Duty: You must demonstrate that the defendant owed you a specific duty of care. This duty can vary depending on the circumstances, such as the duty of a driver to operate a vehicle safely or a healthcare professional to provide appropriate care.

59. Breach of Duty: You must show that the defendant breached their duty of care. This means they failed to act as a reasonably prudent person or professional would under similar circumstances.

60. Causation: You must establish a direct link between the defendant's breach of duty and the injuries you suffered. In other words, you were injured as a direct result of the defendant's actions or negligence.

61. Damages: Finally, you must prove that you suffered actual damages as a result of the breach of duty. These damages can include medical expenses, pain and suffering, lost wages, and more.

62. Dr. Taban owed Frank Tufano a duty as a medical professional to perform his advised surgical procedures with a certain standard of care. By underperforming all 4 procedures to various degrees and being unable to fix them, and refusing to compensate Frank Tufano for the damages to his physical body and appearance, Dr. Taban breached his duty and responsibility as a medical professional to the well-being of his patient. Prior to Dr. Taban's procedures, Frank Tufano was a healthy and active individual, with no disabilities prior physical issues. Frank Tufano is now financially devastated from revisional procedures, and unable to resume running his previous social media and business operations, causing irreversible millions of dollars of damages.

## INFORMED CONSENT

63. Dr. Taban lied to Frank Tufano about the risks of the procedure, dramatically understating the risks.

64. Dr. Taban stated a 2% risk of "double Vision," yet all medical literature cites 15-20% for the specific procedure.

65. Dr. Taban did not mention the possibility of disfigurement (severe cross-eyed appearance) that accompanies the double vision risk, which would offset any cosmetic benefits of said procedure.

66. Dr. Taban "up-charged" Frank Tufano $8,000 the day prior to surgery claiming Frank Tufano needed a two-stage decompression instead of single-stage, the two-stage decompression having a much hire risk of error.

67. Frank Tufano specifically asked Dr. Taban the day before the surgery if his eyes would appear closer together. Dr. Taban stated that Frank Tufano's eyes would not be closer together from the elected procedures, however Frank Tufano's

eyes are now extremely close and his interpupillary distance decrease is one of the main factors causing Frank Tufano to appear cross-eyed and disfigured.

68. There is medical literature stating that interpupillary distance will decrease as a result of orbital decompression. This is information that any oculoplastic surgeon should be familiar with, let alone someone who performs these procedures on a weekly basis. Frank Tufano found out after the surgery that there is factually correct medical literature contradicting Dr. Tabans statements.

69. Dr. Taban ignored the available medical literature statistics and lied to Frank Tufano about the actual risk percentage in order to coerce him into getting a risky and dangerous procedure. Dr Taban valued his own personal net worth and monetary gains over the safety and well-being of his patient Frank Tufano.

70. If Frank Tufano had known the legitimate risk percentage and possible negative outcomes of the procedure, Frank Tufano could have made an informed decision to not undergo an elective procedure with such high risk of complications, especially considering there were much lower risk cosmetic procedures available.

**STANDARD OF CARE – SURGICAL ERRORS**

71. Frank Tufano was left with severe cross-eyed disfigurement and visual impairment immediately after the surgery.

72. Every single procedure that Dr. Taban performed was not done "correctly."

73. Dr. Taban removed too much tissue by performing a two-stage decompression, this removal of supporting tissue in the medial (inner) wall of the eye removed crucial soft tissue support that likely caused Frank Tufano's eye-misalignment

(Strabismus). A lateral (outer) decompression was also performed, which on its own as a single-stage decompression would have had much lower risk.

74. In his consultation with Dr. Raymond Douglas, the most experienced orbital decompression surgeon in the world, Dr. Douglas stated that he would never perform more than a lateral decompression in a cosmetic application as the risks of a two-stage decompression including the medial wall are too risky.

75. The upper eyelid ptosis repair was not successful, the right eyelid is much higher than the left which created upper eyelid asymmetry that was not present before the procedure

76. The lower eyelid retraction was done asymmetrically, Frank Tufano's left inner eyelid is up higher, and his outer right eyelid is out further, creating an asymmetric appearance in Frank Tufano's lower eyelids that was not present before the procedure.

77. The infraorbital rim implants were placed asymmetrically below the eyes, the right implant being slightly higher while the left implant being too low created a hollow and asymmetric appearance in Frank Tufano's undereye area that was not present before the procedure.

78. Dr Taban claims to be a "Top World Renowned Oculoplastic Surgeon," however he did not perform one procedure "correctly." Every single procedure performed on Frank Tufano was asymmetrical, far below the standard of what the expected results of any of these procedures would be.

## INJURY

79. Frank Tufano has been left with a permanent cross-eyed appearance, permanent loss of vision, re-occurring pain in the form of physical eye pain, headaches, and nerve pain near the implant area.

80. Frank Tufano's visual impairment has made it difficult for him to maintain and run his business operations as there are many physical day-to-day tasks he was encumbered with.

81. Frank Tufano's deformed visual appearance has made it so he can no longer perform his regular social media activities that has had a significant negative impact on his mental health.

82. Frank Tufano consulted with psychiatrists attempting to seek relief from the negative impact this has had on his mental health but in every consultation the police were called and Frank Tufano was evaluated for suicidal tendencies.

83. Frank Tufano spends most of his day lying in bed taking pain medications, and is in severe physical and mental distress, unable to resume his previous life.

## DAMAGES

84. Frank Tufano has suffered extremely physically and mentally from a high amount of corrective surgeries over less than a one year period. Before having surgery with Dr. Taban, Frank Tufano had a thriving online business which was heavily dependent on his physical appearance for posting to social media as Frank Tufano is a "YouTube Personality."

85. Because of his disfigured physical appearance Frank Tufano is no longer mentally or physically able to maintain his online social media persona, which the growth and prosperity of his successful business was dependent on.

86. Frank Tufano's combined gross business revenue is several million dollars per year and has been growing rapidly at 150%-200% every single year. But now that Frank Tufano is unable to continue his business as it was – and future growth and operation has been heavily compromised by Dr. Tabans damage to his physical appearance and function. Frank Tufano can only estimate based on the current growth over the next 20 years he would have been able to operate his business.

87. If Frank Tufano maintained his current business growth of 150% for the next 20 years he would have an estimate gross revenue of $8-11 billion dollars per year, equating to at least $500 million in gross profit per year.

**FRAUDULENT CONCEALMENT**

88. "Fraudulent concealment occurs when a healthcare provider intentionally hides information about the malpractice from the patient, preventing them from discovering the injury or the cause of action.

89. This is distinct from simply failing to disclose information; it requires an active effort to hide the truth, according to some legal resources.

90. For example, if a doctor knows they made a surgical error but actively misleads the patient about the cause of their complications, that could constitute fraudulent concealment.

91. Professional negligence" means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

92. Dr. Taban continued to lie to Frank Tufano and hide his errors, despite other medical professionals actively diagnosing Frank Tufano, even actively performing surgeries on him. Because of this concealment, it took Frank Tufano over 5 revision procedures. If this had been addressed honestly, truthfully, and immediately, Frank Tufano may have been able to reverse the damage caused by Dr. Taban's initial surgery. Dr. Taban, based on his previous surgical experience, was well-aware of the error but actively decided to mislead Frank Tufano over the course of many months, while Frank Tufano was consulting dozens of professionals attempting to figure it out on his own.

## NEGLIGENCE PER SE

93. "Violation of a Law: The defendant must have violated a statute, ordinance, or regulation.

94. Intended to Protect: The law must have been designed to protect the type of person or interest that was harmed.

95. Protected Class: The plaintiff must be within the class of people the law was designed to protect.

96. Causation:The defendant's violation must have proximately caused the plaintiff's injuries.

97. Dr. Taban performed a procedure that was not medically necessary on Frank Tufano. Although Dr. Taban failed to execute all 4 procedures correctly, the failure of the Orbital Decompression in particular was the most definite reason for Frank Tufano's partial blindness, physical disabilities, and other related eye issues. Any professional medical organization would have regulations and ordinances requiring the patient to have Thyroid Eye Disease or very apparent bulging eyes for this procedure to be performed. These regulations are intended to protect patients from having unnecessary procedures performed on them. Frank Tufano as a patient, was not protected by these regulations and surgical standards, because they were directly violated by Dr. Taban performing the unnecessary procedure of Orbital Decompression on unqualified patient Frank Tufano.

## NEGLIGENT INFLLICTMENT OF EMOTIONAL DISTRESS

98. California law allows you to recover damages for the negligent infliction of emotional distress (abbreviated NIED). This is not an independent cause of action. Rather, it is a basis for damages in a negligence claim.

99. Under California law, emotional distress damages can be claimed if you were either a direct victim of someone's wrongful act, or a bystander who witnessed an injury to a close relative.

100. Damages for a plaintiff's emotional distress can include both economic- and non-economic damages such as: Medical bills,Bills for psychological counseling Lost wages, and Pain and suffering, including loss of enjoyment of life.

101. As a result of the physical pain, partial blindness, and disfigurement to his face caused by Dr. Taban, Frank Tufano is no longer willing to participate in any aspect of his life anymore. Frank Tufano spends the majority of the day lying physically in his bed in pain, and is no longer able to properly run his online social media and businesses.

## PREVIOUS CASES DEMONSTRATING NEGLIGENCE

102. Dr. Taban has been involved in many past lawsuits demonstrating a repeated pattern of patients having issues with his negligence committed through medical malpractice. There are more cases that Frank Tufano will be able to document as relevant when he is granted a reasonable amount of time to act as a Pro Se Litigant.

A. Hillary Hayman vs. Mehryar Taban, April 22, 2020

B. Brendan Tully vs. Mehryar Taban July 15, 2020

C. Maly Has vs. Mehyryar Taban, Jan 09, 2023

D. Selin Williams vs. Mehryar Taban, Jun 30, 2023

## MEDICAL NEGLIGENCE
## California Code, Code of Civil Procedure - CCP § 340.5

103. In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement

of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first.

104. "Health care provider" means any person licensed or certified pursuant to Division

105. (2) "Professional negligence" means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

106. Dr. Taban has caused permanent and irreversible injury to Frank Tufano through medical negligence, performing procedures that were in his scope of practice as an oculoplastic surgeon.

**SECOND CLAIM FOR RELIEF**
**PUNITIVE DAMAGES**
**California Code, Code of Civil Procedure - CCP § 425.13**

107. In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established

that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier.

108. Based on Frank Tufano having to undergo 5 (FIVE) Revision Surgeries and multiple other cosmetic correction procedures, and has still not recovered his previous vision and appearance, it is very clear that Dr. Taban committed MALICE through his OPPRESSION of the FRAUDULENT medical practices committed.

**THIRD CLAIM FOR RELIEF**
**ECONOMIC AND NON-ECONOMIC DAMAGES**
**California Code, Code of Civil Procedure - CCP § 1431.2**

109. In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.

110. (b)(1) For purposes of this section, the term "economic damages" means objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement,

costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities.

111. (2) For the purposes of this section, the term "non-economic damages" means subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.

112. Frank Tufano's currently physically disabled state, constant pain, and disfigured appearance are grounds for the maximum medical compensation of $430,000 per defendant for a total of $3,010,000 (3 million Ten Thousand Dollars)

113. Frank Tufano's inability to operate his business and loss of future revenue is estimated to be in the hundreds of millions of dollars based on previous sales and growth patterns.

**FOURTH CLAIM FOR RELIEF**
**MEDICAL INJURY COMPENSATION REFORM ACT**
**California Code, Civil Code - CIV § 3333.1**

114. In the event the defendant so elects, in an action for personal injury against a health care provider based upon professional negligence, he may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the personal injury pursuant to the United States Social Security Act, 1 any state or federal income disability or worker's compensation act, any health, sickness or income-disability insurance, accident insurance that provides health benefits or income-disability coverage, and any contract or agreement of any group, organization, partnership, or corporation to provide, pay for, or reimburse the

cost of medical, hospital, dental, or other health care services. Where the defendant elects to introduce such evidence, the plaintiff may introduce evidence of any amount which the plaintiff has paid or contributed to secure his right to any insurance benefits concerning which the defendant has introduced evidence.

115. Based on Frank Tufano's physically disabled state and inability to care for himself he requests an additional compensation of $4,018 per month for the remainder of a reasonable lifetime, the maximum amount for social security disability payments, equivalent to $2,266,152 (Two Million, Two Hundred Sixty Six Thousand, One Hundred Fifty Two Dollars)

**FIFTH CLAIM FOR RELIEF**
**NONECONOMIC LOSSES**
**California Code, Civil Code - CIV § 3333.2**

116. In any action for injury against a health care provider or health care institution based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage, subject to the limitations in this section.

117. (1) Civil liability for damages for noneconomic losses against one or more health care providers, collectively, shall not exceed three hundred fifty thousand dollars ($350,000), regardless of the number of health care providers, which does not include any unaffiliated health care providers that are responsible for noneconomic losses pursuant to paragraph

118. Frank Tufano's currently physically disabled state, constant pain, and disfigured appearance are grounds for the maximum medical compensation of $430,000 per defendant for a total of $3,010,000 (3 million Ten Thousand Dollars)

**SIXTH CLAIM FOR RELIEF**
**HEDONIC PLEASURES – LOSS OF ENJOYMENT OF LIFE**

119. Frank Tufano is physically bedridden the majority of the day, requiring between 16-20 hours of rest and removal from daily activity causing unbearable head/eye pain.

120. Frank Tufano no longer wishes to go out or be seen in public due to his physical appearance, and is only continuing his business and social media operations as he has not been compensated for what has been done.

121. The average starting point for the value of a statistical life is between $4 and $5 million dollars, therefore Frank Tufano will request $4,500,000 as a result of not being able to enjoy normal activities the rest of his life.

**SEVENTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE**

122. On June 3, 2025, Frank Tufano became aware of a "Cease and Desist" letter sent via email to him on Tuesday, May 20, 2025.

123. In this cease and desist letter, LAVELY & SINGER implied they would get Frank Tufano's social media accounts deleted "as well as the deletion of your social media accounts at issue". (EXHIBIT A) "our firm will have no choice but to take action in contracting all of the third-party service providers that you are

using in order to publish your Defamatory Publications and seek removal of your social media accounts for your extortion" (EXHIBIT B) 'That are crucial to his current and future business operations, which are outside the scope of this medical malpractice lawsuit.

124. LAVELY & SINGER specifically stated that they would contact all third party platforms that Frank Tufano uses to conduct his business in attempt to get him removed from those platforms, despite Frank Tufano only sharing factual information documenting his experiences from his surgery with Dr. Taban.

125. The initial malpractice caused by Dr. Taban effectively caused Frank Tufano to be unable to perform his previous social media presence, primarily on YouTube and TikTok.

126. Frank Tufano, therefore, started documenting his problems with his appearance and vision impairment, to explain as well as apologize to his viewers and customers for his lack of presence to try to gain support to get him through his medical bills and physical/mental troubles.

127. Frank Tufano has no intention of harming Dr. Taban's reputation or livelihood, however, if stating the facts of an event happen to have a negative impact or result, Frank Tufano is not in control of a persons personal opinion in whether or not they want to do business with Dr. Taban after being shared Frank Tufano's personal experience.

128. Frank Tufano is sharing his negative experience with Dr. Taban, as his face was "botched," and he suffered significant vision issues, therefore any outside person may interpret this in a similar fashion and decide not to do business with

Dr. Taban, which is out of Frank Tufano's control as he does not want to distort facts from fiction or opinions.

129. Frank Tufano even reached out to Dr. Taban, in attempt to settle all online quarrels until the lawsuit had been resolved, which Dr. Taban and his representation LAVELY & SINGER interpreted as extortion, despite it being more interpretable as a legitimate offer of Frank Tufano being reimbursed for the damage done to his face and vision under the guarantee that Frank Tufano does not show his factual surgical results on social media any further.

130. This Cease and Desist letter from LAVELY & SINGER is a disgusting overreach of harassment and continues to show how manipulative and evil Dr. Taban is, spending whatever amount of money it takes on the top law firms to harass his victims.

131. Frank Tufano is over $330,000 in debt from a combination of surgical and medical expenditures incurred by Dr. Taban's malpractice, as well as loss in business revenue due to not being able to work, also majorly incurred by Dr. Taban's malpractice.

132. By posting these factually correct social media videos, Tufano is trying to get help and support to pay for his revision surgeries and medical expenses. Out of the large amount of money requested, Frank Tufano has raised less than $1,000 in donations.

133. Dr. Taban has not only ruined Frank Tufano's life and financial condition by deforming his face, mutilating his vision, and making him broke, he is not

attempting to take away what is left of his business operations to leave him completely broken and without any resources.

134. Tortious interference, also known as intentional interference with contractual relations, is a legal principle that protects business relationships by holding a party liable for damages when they intentionally interfere with a valid contract or business relationship between others, causing harm. Frank Tufano requests all case decisions pertaining this matter be decided by a jury of his peers.

135. Tortious interference arises when a party's intentional actions disrupt a legally binding agreement or a promising business relationship, resulting in harm to another party:

A. This involves interfering with a potential business relationship, even if no contract exists.

B. Intentional interference: The defendant's actions must be intentionally designed to disrupt the contract or relationship.

136. Frank Tufano is in active business relationship with various social media online platforms, including Instagram, TikTok, and YouTube, that he has used to document his life and business. LAVELY & SINGER have directly threatened Frank Tufano's livelihood in an unreasonable manner.

137. LAVELY & SINGER claimed they would contract these third party providers to have Frank Tufano removed from using these platforms, causing irreparable harm to Frank Tufano's business and personal being.

138. As of June 5, 2025, Frank Tufano's TikTok account, which had over 20,000 followers and amassed dozens of millions of views, was banned from the platform. All of Frank Tufano's videos have been removed and are no longer viewable. This is permanent damage to Frank Tufano's online presence therefore negatively impacting his business in irreparable **form.**

## EIGHTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE

139. A valid existing contractual relationship between Dr. Douglas existed to restore the function of his orbits after being damaged by Dr. Taban.

140. Defendants, attorneys for Dr. Taban, were aware of said relationship as they had been informed of the reconstructive procedure via this action.

141. Why defendant chose to send legal documents to a doctor that was currently treating a patient, regardless of the circumstances of the legal request, is undoubtedly a malicious attempt to disrupt the existing doctor patient relationship.

142. There is no circumstance where it would be acceptable to involve, to even make Dr. Douglas aware of an existing suit between Frank Tufano and his previous Dr. Taban, as it would only incentivize Dr. Douglas to not treat Frank Tufano further for fear of legal action against his own person.

143. Dr. Douglas was conversing and receptive with Frank Tufano up until the date that the subpoena was served to Dr. Douglas's office for medical records. There is no other factor or reason that Frank Tufano could assume why Dr. Douglas would stop treatment. The procedure performed by Dr. Douglas went incredibly well, but Frank Tufano still needed further procedures that are much less risky than what was already performed successfully.

## NINTH CLAIM FOR RELIEF
**Title 42 Pa.C.S.A. Judiciary and Judicial Procedure § 5524**
**Fraudulent Concealment**

**2. The following actions and proceedings must be commenced within two years:**

**Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.**

**3. To pursue a civil claim for conspiracy under Pennsylvania law, a plaintiff must prove that two or more individuals agreed to commit an unlawful act or a lawful act by unlawful means, that an overt act was committed in furtherance of this agreement, and that the plaintiff incurred actual damages. This claim is not a standalone tort and must be based on an underlying civil wrong, such as fraud, defamation, or tortious interference, which the alleged conspirators agreed to commit.**

## FRAUD

4. Judicial Officials for the state of California conspired together to commit fraud against Frank Tufano, intentionally ignoring his document filings and not allowing any motion documents that were filed to be granted. All defendants are complicit in this fraud committed against Plaintiff.

## TORTIOUS INTERFERENCE

5. The actions of Dr. Taban have completely ruined Frank's life, leaving him physically, emotionally, and financially destroyed. The court's intentional postponement of justice against Dr. Taban is preventing Frank Tufano from being compensated for his disability, disfigurement, and pain and suffering.

## FRAUDULENT CONCEALMENT

6. Concealment Of a material fact, knowledge and intent, duty to disclose, reliance and damages

7. The judicial officials and court clerks knew that their actions were fraudulent but still did so as they were likely ordered by their superiors.

## CIVIL CONSPIRACY

8. Frank Tufano believes that Defendant parties conspired with court officials to have an agreement to conduct a lawful act accomplished through unlawful means.

9. Defendants met in secrecy to conspire against Frank Tufano to obtain a fraudulent dismissal against Dr. Taban by not giving Frank Tufano a fair trial.

10. The conspirators goal was to obtain a legal case dismissal against Frank Tufano by means of fraud and legal malpractice, a lawful objective through unlawful means.

11. Judicial officials intentionally committed fraud against Frank Tufano

12. The conspirators have acted with malice and intent to permanently injure Frank Tufano's personal life and financial status without legitimate reason outside of their freemasonic bias.

**TENTH CLAIM FOR RELIEF**
**18 U.S. Code § 241 - Conspiracy against rights**

13. The defendants, involved in "Frank Tufano vs. Mehryar Ray Taban MD," conspired against Frank Tufano oppressing him of Seventh and Fourteenth Amendment Rights

Seventh Amendment Right to a Jury Trial. The Seventh Amendment to the United States Constitution protects the right to a jury trial in federal civil cases that meet certain requirements:

A. The value in controversy must exceed $20

B. The right to a jury trial applies to suits at common law

C. Judges cannot re-examine facts presented by the jury, except in accordance with common law rules.

The California case met all the requirements of the Seventh Amendment, which was created to protect citizens from government overreach by establishing the right to a jury trial in civil cases.

14. The members of this case had no intention of giving Frank Tufano a fair trial as it is irrelevant to their sworn oaths to defend their fellow freemason members, all decisions were placed in the hands of an individual judge who may or may not have attended meetings at a Masonic Lodge to discuss case decisions in secrecy.

15. The Fourteenth Amendment, through its Due Process Clause, applies the First Amendment's freedom of religion protections to state and local governments, prohibiting them from restricting the free exercise of religion. This "incorporation" ensures that religious liberty, including the right to hold, teach, and practice beliefs, is protected against state infringement.

**Equal Protection:** The 14th Amendment also ensures that state governments cannot discriminate against religious practices or show hostility toward religion

16. Because Frank Tufano's religious beliefs are not of Freemasonry, the California Court officials directly discriminated against him in favor of their fellow Freemasons.

**REQUEST FOR TEMPORARY RESTRAINING ORDER**

144. Frank Tufano hereby requests the court name LAVELY & SINGER as co-defendants in this action, and requests a TEMPORARY RESTRAINING ORDER to be issued against MEHRYAR RAY TABAN AND LAVELY & SINGER to prevent them from contacting any third party social media providers involved with Frank Tufano's business operations, which is irrelevant to this lawsuit, and will only further harm Frank Tufano's depleted resources and ability to defend himself in this matter.

145. Frank Tufano's TikTok account has still not been recovered and holds valuable evidence and documentation of the events that occurred to Frank Tufano over the previous two year timespan.

**REQUEST FOR TEMPORARY RESTRAINING ORDER**

146. Frank Tufano hereby requests the court name KJAR, MCKENNA & STOCKALPER, LLP as co-defendents in this action and requests a TEMPORARY RESTRAINING ORDER be issued against them, preventing them from contacting any doctors or persons associated with any contractual relationship with Frank Tufano.

**PRAYER FOR RELIEF**

147. WHEREFORE, by reason of the acts and circumstances alleged herein, Frank Tufano seeks relief from this Court as follows:

A. Frank Tufano receives $430,000 in non-economic damages for his pain and suffering endured through multiple medical procedures from each defendant for a total of 3,010,000 Dollars (Three Million and Ten Thousand Dollars)

B. Frank Tufano be compensated a total of $4,500,000 in Hedonic Damages as a one time payment. (Four Million Five Hundred Thousand Dollars)

C. Frank Tufano be compensated the average social security disability payment over the remainder of his average lifetime at $2,266,152 (Two Million, Two Hundred Sixty Six Thousand, One Hundred Fifty Two Dollars)

D. Frank Tufano be compensated for his loss in business revenue for this initial two year period, an immediate payment of $666,666 to remediate the lost revenue from his social media presence over the time period of the first year and throughout the estimated court timeline.

E. Frank Tufano be compensated for his estimated future business losses, for the first 10 year period ending between $135,000,000 and $201,000,000 in gross estimated revenue based on current growth, with a conservative net income estimated at $8,400,000 over a 10 year period. For the second period of years 10-20, Frank Tufano be compensated an amount no less than $475,000,000 as a net profit estimation based on his business growth percentage prior to his procedure with Dr. Taban.

F. Frank Tufano to be compensated a total of $9,776,152 for his non-economic related damages.

G. Frank Tufano to be compensated a total of $484,733,332 for his economic related damages.

H. The amount in question to be paid for by a percentage to be determined based on responsibility. 25% to Mehryar Ray Taban MD, Mehryar Taban MD INC., and the remaining 75% to be divided between Medical Board of California , The American Academy of Ophtalmology, The American Board of Cosmetic Surgery, The American Society of Ophtalmic Plastic and Reconstructive Surgery, Lavely & Singer PC, The State of California, The Beverly Hills Masonic Lodge, and Kjar, Mckenna & Stockalper LLP, at a fair percentage based on participation deemed by the trial.

Dated: Monday, February 23, 2026

By: /s/ Frank Tufano

Frank Tufano

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 841 Apollo Street, Suite 100, El Segundo, California 90245.

On March 31, 2026, I served the foregoing document described as **DECLARATION OF CHAENA DADE IN SUPPORT OF DEFENDANT MEHRYAR TABAN, MD'S NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S AMENDED COMPLAINT AMENDING AMENDED COMPLAINT [ECF NO. 68]** on all interested parties in this action by placing a true copy thereof in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

XX **By Mail** I caused such envelope(s) to be deposited in the mail at El Segundo, California. The envelope was mailed with postage thereon fully prepaid and addressed to the parties listed on the Service List. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

XX **By Email** Based upon a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the persons at the electronic service addresses listed in the Service List. My email address is stolliver@kmslegal.com.

XX **State** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 31, 2026, at El Segundo, California.

*Sahara Tolliver*

**SERVICE LIST**

80-98

**Frank Tufano v. Mehryar Ray Taban, MD, et al.**

USDC Case No.: 5:25-cv-00147-SVW-JC

Frank Tufano
25 Dundaff ST
Carbondale, PA 18407
Tele: (917)599-2160
frankatufano@gmail.com

*Plaintiff In Pro Per*